**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Thomas Kenniston a/k/a Tommy Gunz, and Maurice Stokes,<br><br>　　　　Defendants. | Case No. 2:13-cr-217-JAD-PAL<br><br>**Order Overruling the Government's and Stokes's Objections to Report and Recommendation [Doc. 71] and Granting in Part Stokes's Motion to Suppress [Doc. 61]** |

Defendants Thomas Kenniston and Maurice Stokes are charged with one count of conspiracy to distribute a controlled substance and three counts of distribution of a controlled substance. Doc. 1. Defendant Stokes moves to suppress evidence obtained during an entry into his hotel room, from his cell phone, as well as statements he made after his arrest and after he requested an attorney. Doc. 61. The matter was referred to U.S. Magistrate Judge Peggy Leen, who conducted an evidentiary hearing, issued proposed findings, and recommends I grant Stokes's motion in part and suppress his post-arrest statements. Doc. 71. Both sides object to Judge Leen's report and recommendation. Docs. 72, 73.[1] Having fully considered the record, I overrule these objections and adopt Judge Leen's Report and Recommendation in full.

**Background[2]**

Defendant Kenniston is alleged to have sold ecstasy pills to undercover law enforcement personnel on three occasions between April 3, 2013, and May 20, 2013. Doc. 63 at 2. Immediately following the May 20, 2013, sale, Kenniston was arrested and told law

---

[1] Although Stokes nor the government has filed a separate response to their adversary's particular objections, as Stokes filed his objections after the government, he has responded to the government's objection.

[2] Unless otherwise noted, this background section is taken from Judge Leen's August 27, 2014, evidentiary hearing. Doc. 66 (minutes). This section is offered for general descriptive purposes only, and is not intended to represent any finding of fact.

1  enforcement that Stokes was his source of supply.  Doc. 71 at 5.  During Kenniston's post-
2  arrest interrogation, his cell phone received repeated text messages asking "are we good"
3  from a phone number identified as "Connects."  *Id.*  Kenniston told the authorities that
4  Stokes was "Connects" and that Stokes was waiting for him to arrive at the Stratosphere
5  Hotel to pay Stokes for the ecstasy transaction.  *Id.*  At the request of the authorities,
6  Kenniston placed a phone call to Stokes, informing him that he was on his way to the
7  Stratosphere.  *Id.*

8      Once law enforcement were in place at the Stratosphere, Kenniston called Stokes and
9  convinced him to come down from his room to the lobby.  *Id.*  At 6:17 p.m., four DEA agents
10 followed Stokes into a hotel elevator in the Stratosphere; at approximately 6:19 p.m. they
11 reached the ground floor, where the agents arrested and cuffed Stokes.  *Id.*  At the time of
12 Stokes's arrest, law enforcement retrieved an iPhone and a Motorola prepaid phone from
13 him.  *Id.* at 6, 9.  The authorities opened the iPhone, commented that there was no lock on the
14 phone, and scrolled through its contents, looking at the text messages and commenting that
15 "oh yeah, he is definitely the one who texted Tommy Gunz."  *Id.* at 9.  The phones were
16 provided to Special Agent Rand Allison, who took the batteries out of the phones, placed
17 them in evidence, and applied for a warrant to search the phones.  Judge Gibson issued the
18 warrant no earlier than May 28, 2013.  *Id.* at 6.

19     After Stokes's arrest, Agent Allison applied for a telephonic warrant to seize Stokes's
20 cell phones and search Stokes's hotel room.  *Id.*  Before the warrant was issued, at
21 approximately 6:35 p.m., authorities conducted a protective sweep of Stokes's room, and
22 pulled a man named Anthony Hardy—who had a non-extraditable robbery warrant in
23 California—out of the room.  *Id.* at 5-6.  The authorities froze the room, but hotel security
24 footage showed that law enforcement re-entered Stokes's hotel room at 7:57 p.m.,
25 purportedly to escort Hardy back into the room to retrieve his personal property.  *Id.* at 5-6.
26 Seven minutes later, footage showed an officer and Hardy leave the room, with Hardy
27 wearing his jacket and an officer carrying a backpack and a box containing Hardy's
28 possessions.  *Id.* at 6.  Between approximately 8:55 and 9:00 p.m., Nevada State Judge David

S. Gibson, Sr. approved the warrant application.  Docs 63 at 24; 71 at 6.

None of the officers who arrested Stokes read him his *Miranda* rights, and one officer informed him that "we got your buddy."  Doc. 71 at 10.  Stokes testified that he did not know what the officers meant, that he might have been arrested for a probation violation, and that he needed to speak to a lawyer.  *Id.*  The officer replied, "we'll get to that."  *Id.*  Smith was eventually placed in a van and transported to the Henderson Detention Center ("HDC") by Special Agent Samuel Smith, a trip that took twenty to twenty-five minutes.  *Id.* at 8-10.  Approximately three to five minutes after Stokes was placed in the van, Agent Smith read him his *Miranda* rights from a DHS card, although he did not have Stokes initial a form acknowledging receipt and waiver of his rights—ostensibly because Stokes was in handcuffs.  *Id.* at 71.  Smith asked Stokes if he understood why he was being arrested, and Stokes stated that he thought it was for drugs.  After Smith told Stokes that he was accused of dealing drugs, Stokes explained that he "connected" people in the drug trade and collected a fee in exchange for this information.  Doc. 71 at 8.  After he arrived at the HDC, Smith and another agent, Lori Bryant, escorted Stokes to an interview room and told Stokes they needed to finish talking to him to get more details.  *Id.* at 8.  However, no *Miranda* rights were read to him at that time.  *Id.*  At no time were Stokes's statements recorded.  *Id.* at 9.

Stokes moved to suppress (1) all evidence obtained from the search of his hotel room at the Stratosphere because the authorities entered the room without a warrant; (2) all evidence obtained from his cell phones because officers accessed his phones prior to issuance of a search warrant; and (3) the post-arrest statements he made under questioning, because they were obtained in violation of his *Miranda* rights.  Doc. 62.  After motion briefing was completed, Magistrate Judge Leen conducted an evidentiary hearing at which Allison, Smith, and Stokes testified.  Doc. 66 (minutes).  The government did not offer testimony from any of the four agents who either participated in Stokes's initial arrest or confiscated and accessed Smith's cell phones before Smith was transported to the HDC.

Magistrate Judge Leen issued a 20-page report and recommendation in which she summarizes the testimony each witness provided at the evidentiary hearing and recommends

1 that I suppress Stokes's post-arrest statements, but permit evidence from the search of
2 Stokes's hotel room and cell phone. Doc. 71 at 20. Both Stokes and the government have
3 filed competing objections to Judge Leen's report and recommendation, which I now
4 consider.

**Discussion**

6 The district court reviews objections to a magistrate judge's proposed findings and
7 recommendations *de novo*[3] and "may accept, reject, or modify the recommendation, receive
8 further evidence, or resubmit the matter to the magistrate judge with instructions."[4] Local
9 Rule IB 3-2(b) requires *de novo* consideration of specific objections only,[5] and the standard
10 of review for the unobjected-to portions of the report and recommendation is left to the
11 district judge's discretion.[6] I now consider the parties' objections *de novo*.

12 **A.   The government's objection [Doc. 72]**

13 The government objects to Judge Leen's recommendation that Stokes's post-*Miranda*
14 statements be suppressed. Doc. 72 at 1-2. The government contends that Judge Leen's
15 conclusions were factually erroneous,[7] and that "there are at least four other percipient law
16 enforcement witnesses who were present when Stokes was arrested and who would testify
17 that he [did not] ask for an attorney." Doc. 72 at 2. The government explains that it did not
18 call these witnesses at the evidentiary hearing because Stokes's moving papers "contained

---

[3] Fed. R. Crim. Proc. 59(b)(3).

[4] *Id.*

[5] *United States v. Burkey*, 2009 WL 1616564, at *2 (D. Nev. June 8, 2009) (finding that defendant did not specifically object to magistrate judge's recommendation denying motion to dismiss criminal indictment, where defendant "copied and posted his Motion to Dismiss and recast it as Objections."); *cf. Carrillo v. Cate*, 2009 WL 2575888, at *1 (S.D. Cal. Aug. 17, 2009) (citing *Burkey*, and noting that "generalized objections" do not require *de novo* review).

[6] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (a "district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.") (emphasis in original).

[7] The government does not articulate which facts it believes were erroneous, choosing to rely only on its additional-witness argument. *See* Doc. 72 at 6. I decline to consider this vague objection.

only generalities and lacked any basic facts specifying when and to whom Stokes invoked his right to counsel." *Id.*  In response, Stokes argues that Judge Leen correctly found that the statements should be suppressed, that the government had adequate notice of Stokes's arguments, and that an additional evidentiary hearing would contravene the policies of judicial efficiency which undergird the District-Magistrate Judge referral system.  Doc. 73 at 4-5.

"[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."[8]  Permitting this discretion "makes prudential sense" because "[t]o require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court."[9]  However, my exercise of discretion must involve more than a summary acceptance or denial of the motion.[10]

Although Stokes's original motion to suppress was terse, it was not vague.  It states that "Upon his arrest, before questioning began and despite officers' failure to Mirandize him, Stokes invoked his Fifth . . . Amendment right to counsel.  Despite his request, however, the officers began an interrogation of Stokes, violating his rights."  Doc. 62 at 8.  The government chose not to present the testimony of any law enforcement personnel who were present upon Stokes's arrest, even though it knew, or should have known, that four officers were present at the time of his arrest.  Doc. 72 at 2.  The government chose the testimony it presented to address this suppression argument; it should not receive a new evidentiary hearing because it recognizes that its chosen witnesses did not produce the result it desired.  Stokes correctly notes that this course would offend judicial economy.  The government's objection is overruled.

---

[8] *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).

[9] *Id.* at 622.

[10] *Sossa v. Diaz*, 729 F.3d 1225, 1231 (9th Cir. 2013) (quoting *Howell*, 729 F.3d at 622).

**B.     Stokes's Objections [Doc. 73]**[11]

**1.     Evidence from Hotel Room Entry**

Stokes raises two specific objections to Judge Leen's ruling. The first pertains to her denial of Stokes's motion to suppress evidence of the hotel room search prior to the warrant. Doc. 73 at 6-7. Stokes does not challenge the validity of the search warrant that Judge Gibson ultimately issued; he reiterates the initial arguments from his motion to suppress.

It is undisputed that the Stratosphere hotel security footage depicts the authorities twice entering Stokes's hotel room prior to the warrant. The second time they entered, they stayed in the hotel room for approximately four minutes. Neither Allison nor Smith, the two government witnesses who testified at the evidentiary hearing, had entered Stokes's hotel room, although Allison testified that entry was made first to perform a protective sweep of the room and extract Hardy and then to escort Hardy back into the room so he could remove his personal possessions. Doc. 71 at 13. Judge Leen found that even if these entries were unlawful, "there is no evidence in the record to support Stokes' speculation that the officers conducted a search of the room before the search warrant was obtained," and the search warrant application and affidavit did not rely on information learned by authorities from their observations of the room. Doc. 71 at 13. Thus, Judge Leen concluded, that even if the entry was illegal, the search warrant "was not tainted by any evidence derived from the two prior entries into Stokes' hotel room." *Id.* I agree; even assuming *arguendo* that the pre-warrant entries into Stokes's hotel room were unlawful, evidence of probable cause to support the search warrant application did not rely on observations from the prior entries into Stokes's hotel room. Suppression of the fruits of the hotel-room search is not dictated.[12] Stokes's objection is overruled.

---

[11] Stokes's objection reiterates all of his arguments from his original motion, as well as "arguments previously made in court." As noted above I am not obligated to conduct a *carte blanche* review of such vague "objections," and therefore address only the specific objections Stokes chooses to raise in Doc. 73.

[12] *Murray v. Williams*, 487 U.S. 534, 543 (1988); *see United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995) ("To be untainted by [a] prior search, the officers' decision to seek the warrant must not have been 'prompted by what they had seen during [the earlier unlawful search].'") (quoting *Murray*, 487 U.S. at 542).

### 2. Evidence from Stokes's Cell Phones

Reiterating his original motion arguments, Stokes also objects to Judge Leen's recommendation that his request to suppress the cell-phone evidence be denied. Doc. 73 at 7. This objection hinges on Stokes's testimony that the authorities looked through his cell phones and commented on messages from him to Kenniston prior to obtaining a search warrant. Stokes does not, however, challenge the validity of either of the two warrants that Judge Gibson ultimately issued.

Judge Leen found that pursuant to *Riley v. California*,[13] the authorities required an additional warrant to access the data on Stokes's iPhone and Motorola phone, that Stokes testified that authorities had in fact accessed the phone prior to the entry of the evidentiary hearing, and that his testimony was both uncontradicted and credible. Doc. 71 at 14-15. However, Judge Leen also found that Judge Gibson's May 20, 2013, warrant authorized the seizure of the phones and, like that portion of the warrant that authorized entry into Stokes's hotel room, this one did not rely on information obtained through an unlawful search of the cell phones' contents. Doc. 71 at 15. The validity of this warrant, as well as Judge Gibson's subsequently issued cell-phone-search warrant, has gone uncontested. Thus, evidence obtained from Stokes's cell phones need not be suppressed. Stokes's objection is overruled.

### Conclusion

Accordingly, based on the foregoing reasons, and Magistrate Judge Leen's findings and conclusions, and with good cause appearing and no reason for delay,

**IT IS HEREBY ORDERED** that the Government's Objections to Magistrate Judge Leen's Report and Recommendation **[Doc. 71] are OVERRULED**;

**IT IS FURTHER ORDERED** that Stokes's Objections to Magistrate Judge Leen's Report and Recommendation **[Doc. 71] are OVERRULED**;

**IT IS FURTHER ORDERED** that Magistrate Judge Leen's Report and Recommendation **[Doc. 71] is ADOPTED** full;

---

[13] 134 S.Ct. 2473 (2014).

**It is FURTHER ORDERED** that Stokes's Motion to Suppress Evidence **[Doc. 62] is GRANTED** in part and **DENIED** in part:

1. Stokes's post-arrest statements are suppressed;
2. The motion is **DENIED** in all other respects.

DATED: November 20, 2014.

_____
Jennifer A. Dorsey
United States District Judge